CULLEN F. THOMAS AND OLGA THOMAS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16903. Promulgated January 16, 1929.

*H. B. Thomas, Jr., Esq.*, for the petitioner.
*C. H. Curl, Esq.*, for the respondent.

# 1344

## OPINION.

Love: The respondent, through his attorney, contends that under the facts above set forth, the petitioners have sustained no deductible loss under the Revenue Act of 1921, and cites the provisions of section 202 thereof, as follows:

(c) For the purposes of this title, on an exchange of property, real, personal or mixed, for any other such property, no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value; but even if the property received in exchange has a readily realizable market value, no gain or loss shall be recognized.

\* \* \* \* \* \* \*

(2) When in the reorganization of one or more corporations a person receives in place of any stock or securities owned by him, stock or securities in a corporation a party to or resulting from such reorganization. The word "reorganization" as used in this paragraph, includes a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or of substantially all the properties of another corporation), recapitalization, or mere change in identity, form, or place of organization of a corporation, (however effected);

\* \* \* \* \* \* \*

(e) Where property is exchanged for other property which has no readily realizable market value, together with money or other property which has a readily realizable market value, then the money or the fair market value of the property having such readily realizable market value received in exchange shall be applied against and reduce the basis, provided in this section, of the property exchanged, and if in excess of such basis, shall be taxable to the extent of the excess; but when property is exchanged for property specified in paragraphs (1), (2), and (3) of subdivision (c) as received in exchange, together with money or other property of a readily realizable market value other than that specified in such paragraphs, the money or the fair market value of such other property received in exchange shall be applied against and reduce the basis, provided in this section, of the property exchanged, and if in excess of such basis, shall be taxable to the extent of the excess.

We do not agree with the conclusion at which the respondent has arrived. We are of the opinion that in this case it is clear that within the meaning and intent of section 202 (c) there was in 1921 no reorganization, merger, consolidation, recapitalization, nor mere change in identity, form, or place of organization of the Security Bank.

The Security Bank found itself in grave financial difficulties in the spring of 1921, and went into voluntary liquidation; but it never was reorganized and it never lost its identity nor its independence by merger, consolidation or in any other manner until later it became defunct by inoperation.

The only witness was Cullen F. Thomas, one of the petitioners herein. Mr. Thomas is a lawyer and was one of the attorneys for the bank of which he was also a director and vice president. His character and his reputation for fairness, admitted in the record by the attorney for the respondent, are such that his testimony stands unchallenged; no attempt whatever being made on behalf of the respondent to rebut or discredit it.

From the record it appears that in the crisis confronting the Security Bank, precipitated by its financial difficuties, the directors decided to incorporate a new bank, the Southwest National, and to sell to it all the assets of the Security Bank except its corporate name and charter in consideration of the assumption by the new bank of all the obligations of the Security Bank, except its capital liabilities. This was done and in the agreement of July 19, between the two banks, this transaction is expressly designated as a sale of the assets of the Security Bank.

The transaction has none of the characteristics of a "reorganization" as defined in section 202 (c) of the Revenue Act of 1921, or as that word is generally understood. No new capital, money or resources of any kind were contributed to it by its directors or other stockholders, nor was any attempt whatever made to revive an organization recognized as being in extremis; but a successor bank was created with a new charter, new capital and a new management, which engaged actively in the banking business; while the moribund Security Bank, having sold and disposed of all but its name, its charter, and its capital liability, was permitted quietly to breathe its last. The essential elements of a "reorganization" seem altogether to be lacking here; nor is that fact altered in our opinion, by the admission in the pleadings of the petitioners and in the testimony of Mr. Thomas that the Southwest Bank was organized "for the purpose of taking over the assets and liabilities of the Security National Bank and carrying on the banking business at said bank," and that "part of the plan was, of course, that the new bank would succeed to the depositors in the old." The old bank was dead and the Southwest Bank was a new bank.

Immediately after the organization of the Southwest Bank, the petitioners found themselves in this situation: They had disposed of their 210 shares of stock of the Security Bank which had cost them $31,500, and had received in their place 52½ shares of the stock of the new Southwest Bank, and a certificate of some sort from the Liberty Investment Co. representing their equity (157½ shares or parts) in those assets which had been conveyed for liquidation to that corporation as liquidating agent.

It is not clear, from the record, just what the above "certificate" was. In several places, references are made to it as a "stock certifi-

cate " or as a " certificate of stock " in the Liberty Investment Co. for 157½ shares, but that does not appear to be its true nature, though the witness, Thomas, himself, occasionally so speaks of it. But from the fact that the first reference to it was as a " certificate of interest " in the three-fourths of the assets of the Security Bank that were turned over to the Liberty Investment Co., not in its own right but as " liquidating agent," and as its exact nature is not material to this issue, no violence will be done either to the petitioners or the respondent if we speak of it in that way.

At this point, then, the petitioners having parted with their 210 shares of stock in the Security Bank which had cost them, subsequent to March 1, 1913, at $150 per share, $31,500, were in possession, in place of them, of 52½ shares of stock in the Southwest Bank, representing one-fourth of their former interest in the Security Bank, which stock had at that time a fair market value of $150 per share or $7,875; and a certificate of undetermined value, from the Liberty Investment Co., representing the cost to them of the remaining three-fourths of their former interest in the Security Bank, or $23,625, which they had not surrendered, but which had been placed with an agent for liquidation for their account and benefit. Clearly there had been so far neither " gain derived nor loss sustained," under the law by the petitioners through this transaction.

If the matter had stopped there we would have no alternative but to sustain the contention of the respondent, but it did not stop there. In December of the same year (1921) the petitioners sold for $1 their entire interest in the remaining assets of the Security National Bank held for their account, use and benefit by the Liberty Investment Co. as liquidating agent and represented by a certificate of that corporation for 157½ shares or equal parts in such assets; claiming as a deductible loss in their income-tax returns for 1921, the difference between the cost to them, $23,625, of their undivided interest in such remaining assets, and the sum of $1 which they realized from the sale. We are of the opinion that the deduction is a proper one.

It is not of moment that after the Southwest Bank had made its selections from the assets of the Security Bank, those remaining which were turned over to the liquidating agent were regarded by the petitioners as being of no value whatever. The fact is that they had never until December, 1921, parted with their title to those remaining assets in such a way as legally to determine and establish their value. It is true that they formed a part of " all " the assets of the Security Bank that were sold to the Southwest Bank under the contract of sale of July 19, 1921; but that sale was made with certain reservations and stipulations clearly set forth in the contract under which the title to those assets " selected " by the Southwest

Bank passed to it when the selections were made; but the undivided interest of the stockholders of the Security Bank in the assets remaining after those selections had been made and segregated never was lost to them pending some subsequent act. In the instant case that subsequent act was consummated in the sale by the petitioners of all their right, title and interest in such remaining assets for the con-consideration of $1, in December, 1921.

The respondent contends further that these petitioners are barred from claiming this loss (the reality of which is nowhere denied) as legally deductible by the language of section 202 (e) of the Revenue Act of 1921, *supra*. We are not of that opinion. The respondent contends that the admitted and undisputed opinion and belief of these petitioners that these remaining assets were without a readily realizable market value at the time that the Southwest Bank was created and their continuing interest in those assets turned over for liquidation to the Liberty Investment Co., preclude them from claiming a lawful loss when their interest in those assets was disposed of and the amount of their loss actually determined thereby; but the fact here is that by the sale in December, 1921, of their entire interest in these remaining assets, these petitioners did "realize," determine, and sustain an actual loss of $23,624 in amount.

We find for the petitioners in the full amount of their claim.

It appears from the record that an error of some kind, the nature and effect of which is not apparent, was made in the preparation of the petitioners' income-tax returns for 1921. This will be corrected in the recomputation of the tax.

*Judgment will be entered under Rule 50.*